# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Jonathan McNeal, a minor by and through his natural parents Tammie McNeal and Kevin McNeal<br><br>Plaintiff<br><br>v.<br><br>Nye County School District, et al.<br><br>Defendants | Base Case No.: 2:12-cv-1717-JAD-CWH<br><br>Consolidated Case Nos.:<br>2:12-cv-02011-JAD-CWH<br>2:12-cv-02006-JAD-CWH<br><br>**Order** |
| Ronda Coleman and Michael Coleman, on behalf of minors Logan Coleman and Collin Coleman<br><br>Plaintiff<br><br>v.<br><br>Nye County School District, et al.<br><br>Defendants | |

These consolidated cases arise out of the alleged abuse of special-needs students in the Nye County School District. This order concerns the claims by Jonathan McNeal and twin brothers Logan and Collin Coleman, all minor-aged, special-needs students at Floyd Elementary School in Pahrump, Nevada.

1

## I.
## Procedural History

### A. The McNeal Motions

On November 7, 2012, the School District Defendant filed a motion alleging the insufficiency of McNeal's allegations and moved for an order that would dismiss or direct a more definite statement of McNeal's claims. Doc. 15. Defendants Holly Lepisto, Sarah Hopkins, Phyllis Dushane, and Kathryn Cummings—all Floyd Elementary School employees during the times relevant to this case—joined in that motion. Doc. 16–18. In March 2013, the District filed a supplement without leave of court, Doc. 51, and McNeal moved to strike it as an unauthorized document. Doc. 55.

While those motions were pending, McNeal moved to file an amended complaint. Doc. 79. The Court granted that motion on December 9, 2013, in part on the mistaken belief that McNeal's request was unopposed. *See* Doc. 85 (order); Docs. 80–83 (oppositions and joinders). McNeal's amended complaint was filed on December 18, 2013. Doc. 86.

### B. The Coleman Motions

On November 6, 2013, the Colemans moved to file an amended complaint in his action. Doc. 41 in consolidated case 2:12-cv-2011. The Court granted that motion on December 9, 2013, in part on the same mistaken belief that the Colemans' request was unopposed. *See* Doc. 42 in 2:12-cv-2011; *see also* opposition filed at Doc. 81 herein. The Colemans' amended complaint was filed the next day. Doc. 43 in 2:12-cv-2011.

### C. Defendants' Motions for Reconsideration

On December 23, 2013, Defendants moved the Court to reconsider its orders allowing the amendment, pointing out the opposition briefs and joinders that the Court overlooked when granting leave, in part, on the basis of the absence of opposition. Docs. 87-90.

Having thoughtfully considered all of the pending motions and the responses and replies related thereto, the Court acknowledges that leave to amend was granted on the mistaken belief that the request was unopposed and thus grants the Defendants' request for reconsideration. However,

upon reconsideration of the merits of the motion for leave to amend, the Court finds that leave was appropriate and should have been granted on its merits.  Accordingly, as more thoroughly set forth below, the Court finds that leave was appropriate and thus validates the decisions to grant leave on other bases.  The Court also finds that the allegations against the Defendants are pled with sufficient particularity and denies the motion to dismiss McNeal's claims.  As the supplement was filed without leave, the Court also grants McNeal's motion to strike the supplement.

## II.

### Discussion

**A.     Motions for Reconsideration (Docs. 87 and 89)**

Motions for reconsideration are not expressly authorized in the Federal Rules of Civil Procedure, but district courts may grant them under Rule 59(e).  *See Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 179 F.3d 656, 665 (9th Cir. 1999).  Reconsideration is only warranted when (1) the movant presents newly discovered evidence, (2) the district court committed clear error or the initial ruling was manifestly unjust, or (3) there is an intervening change in controlling law.  *Id.* (citing *All Haw. Tours, Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648 (D. Haw. 1987)).  Although reconsideration may also be warranted under other highly unusual circumstances, it is well recognized as an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2007) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).

*1.     Reconsideration is Warranted*

This is one of those highly unusual circumstances.  As the Defendants have correctly pointed out, the Court granted McNeal's and the Colemans' requests for leave (Doc. 79; consolidated Doc. 41) by minute order, citing "good cause" and the absence of opposition as the bases for its decisions, Doc. 85; consolidated Doc. 42, when, indeed, oppositions had been filed. Docs. 80-83.  Defendants are entitled to a reconsideration of McNeal's and the Colemans' motions *with full consideration* of all of Defendants' arguments in opposition.  Accordingly, the Court grants the motions for reconsideration.  Doc. 87; Doc. 89.

### 2. *Leave Is Still Proper*

The full consideration of Defendants' responses does not bring this Court to the conclusion that the decisions to grant leave were incorrect.

#### a. *Leave to amend is freely granted.*

Courts "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing Fed. R. Civ. P. 15(a); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)) ("In general, a court should liberally allow a party to amend its pleading."). The federal courts' tendency is to permit new chances: the Ninth Circuit states that "[t]his policy is to be applied with extreme liberality." *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)) (internal quotation marks omitted). The Supreme Court also affirms that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Leave is proper unless "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" justify its denial. *Id*. "The consideration of prejudice to the opposing party carries the greatest weight." *Sonoma*, 708 F.3d at 1117 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

#### b. *Leave to amend was—and remains—appropriate here.*

In opposition to the motions for leave and in their own motions for reconsideration, Defendants argue that the allegations in both amended complaints fall below the 12(b)(6) standard, rendering them futile. Doc. 80 at 3; Doc. 82; Doc. 81 at 3; Doc. 83. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 204 F.R.D. 460, 463 n.5 (C.D. Cal. 2001) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)) (internal quotation marks omitted). A

plaintiff must state his claim with enough facts, which the court will take as true and construe in the light most favorable to him, to be plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 556, 570 (requiring complaints to raise a reasonable expectation that discovery will yield evidence of legal violations); *accord, Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). Bare and unsubstantiated allegations will not suffice; there must be some substance on which courts might find defendants violating the law and thereby grant a legal or equitable remedy. Upon thorough review of the allegations in both amended complaints, the Court finds that McNeal and the Colemans have pled sufficient facts to survive a Rule 12(b)(6) challenge and warrant leave to amend.

> *i.   McNeal's amended complaint is sufficiently pled to warrant leave.*

Defendants contend that McNeal's amendment should have been denied because he does not state a viable claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Doc. 80 at 3. *Monell* applies to constitutional torts committed pursuant to official policy, as established by written law, usage, custom, or tradition. *Monell*, 436 U.S. at 690–91. *Monell*'s official policy requirement calls upon courts to "distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinatti*, 475 U.S. 469, 479–80 (1986) (emphases in original). A plaintiff can establish failure to train as the cause of constitutional torts (1) through custom or usage, (2) when a practice occurs with known frequency, and (3) when this reflects a municipality's deliberate indifference to the high likelihood of constitutional violations against persons with whom the untrained employees have contact. *City of Canton v. Harris*, 489 U.S. 378, 389 (1988); *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citations omitted).

In his Amended Complaint, McNeal pleads constitutional torts caused by "formal policy," "informal practice," "a formal written memorandum discussing the 'physical interaction' in the classroom," "common knowledge around the school that the kids in HOPKINS'S class were abused," "authoriz[ation] and allow[ance]" by Principal Lepisto, lack of follow-up by Special Education Director Sam Simatos "after he contacted LEPSITO regarding the reports of abuse,"

5

"inaction [that] demonstrates deliberate indifference," "the need for a different course of action, specifically not abusing the children," "deliberately choosing to . . . allow[] the abuse to continue," a "grossly inadequate" "existing training program for special education teachers, special education teacher aids and other employees," and more. Doc. 86 at 27–28. These allegations pertain specifically to Hopkins, Cummings, Dushane, Lepisto, and the District. Doc. 86 at 27–28. These are plausibly pled facts and claims on which *Monell* relief could be granted and, as such, they readily survive the 12(b)(6) standard.

Defendants also argue that McNeal's amended complaint fails to allege specific acts against McNeal with sufficient detail to satisfy the Rule 12(b)(6) standard. Doc. 80 at 3–4. Defendants had already moved to dismiss McNeal's original complaint on the basis that the allegations were insufficient to state a viable claim for relief or, in the alternative, for a more definite statement to be required.[1] Doc. 80 at 1. Defendants essentially extend that argument to these new allegations.

While McNeal's original and amended complaints do broadly plead abuse in the classroom in which he was a student, they also allege harm to him individually. They allege that McNeal engaged in stimming, which is a repetitive body movement in which special needs children may engage; that "Defendants HOPKINS, DUSHANE, and CUMMINGS would physically hit students to stop the student's stimming," that "Defendant HOPKINS admitted to consistently hitting Plaintiff when he would start stimming," and that she "also physically hit Plaintiff on other occasions." Doc. 1 at 6–7; Doc. 86 at 6. Among other relevant allegations, he contends that "Defendant LEPISTO received four (4) separate notifications from at least four (4) NCSD employees that Defendant Hopkins and her aides [Dushane and Cummings] were physically abusing children in her class." Doc. 1 at 4; Doc. 86 at 4. Moreover, McNeal pleads that "[a]t all times relevant herein, there has been a policy, practice, and custom at Defendant NCSD to allow the physical abuse of special needs children by NCSD teachers and aides." Doc. 1 at 8; Doc. 86 at 8. He further alleges that, "[a]s a direct and proximate result of the wrongful conduct of Defendants," McNeal "suffered serious

---

[1] *See* Doc. 15 and discussion *infra* at Part I.B.

physical, mental and emotional injuries to his person" and "suffered serious psychological injury." Doc. 1 at 8; Doc. 86 at 8.  These allegations against the District, Lepisto, Hopkins, Dushane, and Cummings are specific"enough to raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555.  Leave to amend was—and remains—appropriate for McNeal.

### ii. *The Colemans' amended complaint is also pled with sufficient specificity.*

Defendants also challenge the Colemans' amended complaint as lacking allegations of specific acts against the Coleman twins that are sufficiently detailed to satisfy the 12(b)(6) standard. Doc. 81 at 5–6.  They contend that "[t]here are allegations of only **three** kinds of misconduct that pertain to **these Plaintiffs**": that the Coleman twins were flicked in the mouth; that when Logan held a clenched hand in front of his face, his teacher punched him in the face with his own fist; and that Hopkins called Logan "lard ass."  Doc. 81 at 5–6 (emphases in original).  The opposition to the Colemans' motion for leave claims that the flicking allegations "are the only allegations concerning COLLIN as one of the 'Plaintiffs.'"  Doc. 81 at 6.  In the Defendants' view, "[t]hese [three] allegations are so threadbare that they fail to suggest" a plausible claim.  Doc. 81 at 6.

The Coleman twins' original and amended complaints, like McNeal's pleadings, describe both an overall climate of abuse and specific injuries to themselves sufficient to satisfy the Rules. The Colemans allege that Cummings "physically abused [them] and other special needs children during her time working in Defendant HOPKINS'S classroom."  Doc. 1 at 4; Doc 43 at 3.[2]  They claim that they engaged in stimming; that Hopkins, Dushane, and Cummings, "physically hit students as a punitive measure to stop the student's [sic] stimming"; and that Dushane pinned down students' hands to stop their stimming.  Doc. 1 at 7; Doc. 43 at 7.  Both Coleman brothers were allegedly flicked, "in the mouth and/or in the head," by Hopkins, Dushane, and Cummings.  Doc. 1 at 8; Doc. 43 at 7.

The Colemans describe Logan returning home from school on or about August 2009 "with bruises on his upper arms and right ear."  Doc. 1 at 7; Doc. 43 at 7.  Logan's mother wrote Hopkins

---

[2] For purposes of this paragraph, all citations refer to the docket in consolidated case 12-cv-2011.

to ask how her son was bruised; she received no response. Doc. 1 at 7; Doc. 43 at 7. On August 28, 2009, Logan "came off the bus with blood coming out both sides of his nose," and on his "face, shirt, and in his mouth." Doc. 1 at 9; Doc. 43 at 9. In the Colemans' pleadings, this allegation directly follows the claim that Logan "had a tendency to hold up his hand in a clench fashion in front of his face when he would get frustrated" and that Hopkins "would grab [his] fist and punch him in the face with it." Doc. 1 at 9; Doc. 43 at 9. On September 28, 2009, Logan apparently returned home "with new bruises on his back, midsection, and upper arms. He also had scratching and bruising to the chin area on the right side of his face." Doc. 1 at 9; Doc. 43 at 9.

Allegations of physical marks are made as to both twins, as the complaint alleges that Collin returned home "with scratches on the inside of his arm" on or about August 7, 2009. Doc. 1 at 7; Doc. 43 at 7. In addition, Collin allegedly returned home on November 20, 2009, "with bruises on the inside of his thighs, inches away from his genitals. He also had a bruise on his private parts." Doc. 1 at 9; Doc. 43 at 10. In March 2010, he returned home "with a bruise on his side, by his hip and above the diaper." Doc. 1 at 10; Doc. 43 at 10. On November 19, 2010, he went missing and had to be returned to the school campus. Doc. 1 at 10; Doc. 43 at 10. Bathing and using the restroom became more difficult for Collin after he was enrolled in Hopkins's class; his potty training regressed. Doc. 1 at 10; Doc. 43 at 10. According to the complaints, both brothers' behavior "markedly changed" after they were placed in Hopkins' classroom. Doc. 1 at 10; Doc. 43 at 10.

The Colemans also allege that Lepisto, Simatos, Special Education Coordinator Joe Gent, and others were aware of the mistreatment occurring in Hopkins' classroom. Doc. 1 at 4–5; Doc. 43 at 4–5. They allege that the District had safety-related policies that applied and should have protected them in this situation, that the District failed to train its employees in these policies, and that this failure led to the actions against the twins. Doc. 43 at 11–14. They bring specifically pled claims for torts including excessive force, battery, negligence under child-abuse reporting requirements, and inadequate training and supervision. Doc. 1 at 9–28; Doc. 43 at 15–32.

Based on this partial recitation of the Colemans' allegations, and based on a full reading of the Colemans' pleadings, the Court finds that Defendants' claim that flicking was the only injury

claimed by Collin a gross understatement. The specific factual allegations and legal claims alleged in the Colemans' pleadings "afford defendants fair notice of what the . . . claim[s] [are] and the grounds upon which [they] rest[]." *Twombly*, 550 U.S. at 555; *see also* Doc. 43. Thus, the Court concludes that the Colemans' original and amended complaints are sufficiently pled to survive a 12(b)(6) challenge, so amendment was not futile and—on its merits—was properly allowed.

In sum, leave to amend was—and remains—appropriate on the merits of McNeal and the Colemans' requests. Although the Court's original decision to grant leave may have been based, in part, upon a mistaken belief that there was no opposition to these requests, having fully reconsidered the merits of these requests and Defendants' oppositions thereto, the Court reaffirms its conclusion that leave was warranted. The First Amended Complaints will stand as properly filed with leave of court.

**B.     The Motion to Dismiss McNeal's Complaint**

The filing of an amended complaint effectively restarts the case, and any previously-submitted motion to dismiss becomes moot. *Wagner v. Choice Home Lending*, 266 F.R.D. 354, 360 (D. Ariz. 2009) (finding that motion to dismiss was moot because it "pertain[ed] to Plaintiff's original complaint and Plaintiff has since filed an Amended Complaint"). Having granted McNeal permission to file his amended complaint—and having determined that the allegations in that amended complaint are sufficiently specific to survive a Rule 12(b)(6) challenge—the Court finds that the Defendants' motion to dismiss McNeal's original complaint is both moot and should have been denied on its merits.[3]

---

[3] Motions to dismiss are considered under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968 (9th Cir. 2009) (citations omitted). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose is to afford defendants fair notice "of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). Defending a complaint against a Rule 12(b)(6) attack calls on plaintiffs to plead factual allegations that are "enough to raise a right to relief above the speculative level." *Id.* (quoting 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)) (internal quotation marks omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Complaints are only dismissed under Rule 12(b)(6) if, beyond doubt, "the plaintiff can prove no set of facts in support of the claim that would entitle" him to relief. *Id.* (citing *Morley v.*

9

**C.     The Supplemental Filing Is Stricken Because It Was Submitted without Leave.**

Local Rule 7-2 governs the filing of all motions in the District of Nevada. It does not permit parties to submit supplemental motions or sur-replies absent leave of court. Defendant's Supplement to Motion to Dismiss was filed without any permission from the Court. While Defendants belatedly requested permission, that request came only after McNeal observed Defendants' failure to seek leave. *See* Doc. 55 at 3; Doc. 61 at 2. Regardless, the supplement focuses on discovery issues most properly addressed by another vehicle. Accordingly, the Court grants Plaintiff's request to strike the supplement.

## III.
## Conclusion

Accordingly, and with good cause appearing,

It is hereby ORDERED that Defendants' Motion to Dismiss Complaint, or, in the Alternative, for More Definite Statement **[Doc. 15] is DENIED**;

It is further ORDERED that Plaintiff McNeal's Motion to Strike Nye County School District's "Supplement to Motion to Dismiss Complaint, or, in the Alternative, for More Definite Statement" **[Doc. 55] is GRANTED**;

It is further ORDERED that Defendants' Motions for Reconsideration **[Doc. 87 and 89] are GRANTED in part and DENIED in part as stated herein**. McNeal's and the Colemans' First Amended Complaints [Docs 84, 86] shall stand as appropriately filed with leave of court.

DATED January 23, 2014.

_____
Jennifer A. Dorsey
United States District Judge

---

*Walker*, 175 F.3d 756, 759 (9th Cir. 1999)). McNeal's original and amended complaints satisfied this standard. *See supra* at § A(2)(b)(ii).